UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                                 Plaintiff,<br><br>v.<br><br>DAVID NEWLAND (1),<br>JAMES DOLAN (4),<br>BRUCE LOVELESS (5),<br>DAVID LAUSMAN (6),<br>STEPHEN SHEDD (7), and<br>MARIO HERRERA (8),<br><br>                                 Defendants. | Case No.:  17CR0623-JLS<br><br>**ORDER DENYING MOTION TO QUASH SUBPOENA** |

Pending before the Court is Non-Party Movants Audiation Inc. and Project Brazen Pte. Ltd.'s ("Movants") Motion to Quash Defendant's Subpoena to Produce Documents, Information, or Objects in a Criminal Case (ECF 635-2).  The Court has considered the motion, Defendants' joint response in opposition, Movants' reply and the applicable legal authorities.  For the reasons set forth below, the Court will deny the motion to quash the subpoena.

**Background**

Defendants Newland, Dolan, Loveless, Lausman, Shedd, and Herrera are former U.S. Navy officers charged with conspiracy and bribery in connection with a ship husbanding company, Glenn Defense Marine Asia ("GDMA"), owned by Leonard Glenn Francis ("Francis").  The indictment in this case is voluminous, but loosely described, Defendants are charged with using their official positions in the Navy to advance GDMA's

1

ship husbanding business in exchange for benefits provided by Francis. A jury trial is scheduled to begin on February 7, 2022.

Francis is charged elsewhere and in 2015 pled guilty to conspiracy to commit bribery, bribery, and conspiracy to defraud the United States. Francis has not been sentenced yet and it is publicly known that he is cooperating with the government with respect to the charges in the instant case. The indictment in this case, filed more than two years after Francis' guilty plea, is presumably based, at least in significant part, on information provided to the government by Francis.

Movant Project Brazen is the owner and creator of a podcast series investigating the corruption scandal in the U.S. Navy carried out by Francis in the years leading up to Francis' 2013 arrest. Mot. to Quash, ECF 635 at 2. Movant Audiation is the production studio hired by Project Brazen to produce and "shop" the podcast for distribution. *Id.* at 3. According to Movants, Francis was interviewed by the podcast host, Thomas Wright, a reporter and co-founder of Project Brazen, for over 20 hours. *Id.* at 2. The first two episodes of the podcast were released online on October 5, 2021, and the next seven episodes were released weekly thereafter. *Id.* at 3.

After the release of several episodes of the podcast, Defendant Dolan, joined by the remaining defendants, filed a motion to compel the production of copies of the recordings of the Francis interviews, or in the alternative, for a pretrial subpoena *duces tecum* compelling their production. ECF 597. The government responded that neither the United States nor Francis possess a copy of the recordings. ECF 612 at 1. On November 18, 2021, this Court granted Defendants' request for a Rule 17(c) subpoena, finding that Defendants demonstrated that the *Nixon*[1] factors of relevancy, admissibility and specificity weighed in favor of pretrial production of the material. Movants' motion to quash the subpoena followed.

---

[1] *United States v. Nixon*, 418 U.S. 683 (1974).

**Analysis**

Movants contend that the First Amendment qualified privilege that protects journalists and media organizations applies to the interview recordings sought by Defendants and that Defendants' burden to overcome the privilege cannot be established. Defendants respond that Movants have waived any First Amendment privilege and, if not waived, that the privilege does not bar production of the materials in this case.

As an initial matter, the Court finds that the interview recordings fall within the qualified journalist's privilege, this conclusion is not disputed between the parties. Defendants contend, however, that Movants have waived any privilege. Defendants identify several facts as supporting a finding of an implied waiver: several hours of the interviews have already been broadcast; Mr. Wright, the podcast narrator, has revealed much of the remaining content by speaking for Francis; Mr. Wright was exceedingly credulous of Francis' claims and the podcasts were scheduled to air in the weeks trial was scheduled to commence to "ramp-up the drama"; the content of the podcasts is biased towards the government's trial case; and, in light of Francis' cooperation agreement and ability to record the interviews himself, Mr. Wright could not have reasonably believed the recordings would remain privileged.

Defendants point to *Ayala v. Ayers*, 668 F. Supp. 2d 1248 (S.D. Cal. 2009) in support of their waiver claim. In *Ayala*, the court found an implied waiver of the journalist's privilege where a manuscript was provided by the author to a habeas petitioner's counsel and the author admitted that he was biased in favor of the petitioner. The court found that it would be unfair and improper to permit invocation of the journalist's privilege with respect to the same material in response to the respondent's subpoena for production. *Id.* at 1250. The *Ayala* court identified two other cases in which a waiver of the journalist's privilege was implied in cases of selective disclosure. In this case, however, there is no evidence that Movants have disclosed any portion of the interviews to the government or its agents. While the timing of the podcast could have been designed to gin up interest, there is no evidence that the release was meant to confer a benefit to one side over the

other, or that one litigant has had access to materials that the other hasn't. Thus, the fairness interests at play in the cases relied upon by Defendants are simply not applicable here. Accordingly, the Court declines to find an implied waiver of Movant's First Amendment qualified privilege.

The Court next turns to the question of whether Defendants have made a showing sufficient to breach the qualified privilege. Interpreting *Branzburg v. Hays*, 408 U.S. 665 (1972), the Ninth Circuit has recognized a "partial First Amendment shield" that protects journalists against compelled disclosure in all judicial proceedings, civil and criminal alike. *Farr v. Pitchess*, 522 F.2d 434, 467 (9th Cir. 1975). The process of deciding whether the privilege is overcome requires that "the claimed First Amendment privilege and the opposing need for disclosure be judicially weighed in light of the surrounding facts and a balance struck to determine where lies the paramount interest." *Shoen v. Shoen,* 5 F.3d 1289, 1292-93, (9th Cir. 1993) (quoting *Farr,* 522 F.2d at 468)("*Shoen I*").

Although the precise legal standard applicable to the production of non-confidential material from a news organization for use in a criminal case is a subject of debate between the parties, the Court finds that the subpoena issued in this case is enforceable even under the more stringent test advanced by the movants. Movants contend that "[u]nder controlling Ninth Circuit law, a litigant may obtain information falling withing the scope of the First Amendment qualified privilege "***only*** upon a showing that the requested material is (1) unavailable despite exhaustion of all reasonable alternative sources; (2) noncumulative; and (3) clearly relevant to an important issue in the case."" Mot. to Quash, ECF 635 at 7, quoting *Shoen v. Shoen,* 48 F.3d 412, 416 (9th Cir. 1995) ("*Shoen II")*.[2]

Here, Defendants have satisfied all three requirements. The Court will discuss the third factor first as the relevancy of the material helps provides context for the remaining

---

[2] Defendants contend that *Schoen II* is only applicable to civil litigation and that, under *Branzburg*, the Court should not permit Movants to withhold non-confidential material. Alternatively, Defendants argue that the Court should apply the balancing test set forth in *Farr*.

analysis. In their opposition, Defendants set forth several portions of the podcast transcript that are relevant to their case. These statements suggest that Francis may have received undisclosed benefits from the government in exchange for his cooperation, that he may be misrepresenting his medical condition to the Court, that he knowingly violated his plea agreement, and that he withheld evidence from the government. While these statements alone are relevant, Defendants maintain that the complete recordings are necessary to ensure that the statements in the podcast are not misleading and as counter evidence should Francis falsely claim at trial that his published statements were presented out of context. The Court agrees.

Given Francis' central role as a cooperating witness in this case, the Court finds that the evidence sought by Defendants is clearly relevant to an important issue in this case. Although the defendants charged in this case have not been expressly named by Francis in the podcast, the government has alleged a vast conspiracy involving Francis, these defendants and co-conspirators not charged in the Indictment. *See, e.g., Gov't Mot. in Limine 23*, ECF 528, at 49. This conspiracy is the topic of the podcast, and Francis has made statements, personally and vis-à-vis the narrator, which appear to call into question his credibility, motive and bias. The Sixth Amendment's confrontation clause guarantees Defendants the right to cross-examination of witnesses, which includes testing the witness' perceptions and memory as well as impeaching and discrediting the witness. *Davis v. Alaska*, 415 U.S. 308, 316 (1974). Francis' believability as a witness will be a crucial determination for the jury as he is the orchestrator and alleged briber of each of the defendants and was closely connected with all of the activities charged in the indictment. While the Court acknowledges that impeachment evidence may not always be sufficient to overcome the reporter's privilege, in this case Francis' critical role in the prosecution requires that Defendants be able to effectively cross-examine him in order to ensure a fair trial. Therefore, the Court concludes that the requested materials are clearly relevant to an important issue in the case.

1       With respect to the requirement of unavailability from other sources, the Court notes that Defendants brought a motion to compel production of the requested material and were informed that neither the United States nor Francis possess a copy of the recordings. ECF 612 at 1. Movants contend that Francis himself is an alternative source of the information revealed during the podcasts, however, unlike the civil litigation context of the authorities cited by Movants, in this case Francis is not available to the defendants for a deposition. Furthermore, as Defendants point out, "recorded verbatim statements are, "[b]y their nature, …not obtainable from any other source."" Def.'s Resp., ECF 640 at 20, quoting *United States v. Cuthbertson*, 630 F.2d 139, 148 (3d Cir. 1980). The Court finds this concept especially important in this case, given that some of Francis' published statements during the podcasts do appear to call into question his veracity. After reviewing the transcripts of the podcasts, the Court has no confidence that statements made by Francis to the reporter would be capable of being fully preserved by questioning Francis a second time—particularly when that second time would involve an entirely different motivation for Francis, his trial testimony pursuant to a plea agreement as a cooperating government witness. Thus, the Court is persuaded that Defendants have demonstrated that the requested material is unavailable from reasonable alternative sources.

      Finally, the Court is persuaded that the requested material is not cumulative. Movants contend that the interview recordings are cumulative because they will merely repeat Francis's testimony. However, Francis' trial testimony, the testimony of the government's "star" witness as Francis proclaims himself in the podcast, will not likely cover the facts that he willfully disregarded what he perceives to be the terms of plea agreement, withheld evidence from the government, and potentially lied to the Court and received benefits for his testimony. The podcast recordings are the exclusive evidence of these statements. The importance of Francis' recorded statements is that they tend to establish bias and cast doubt on his credibility with respect to what is anticipated to be his trial testimony. In this regard, the material is unique.

In addition to these factors, the Court has considered the Movants' interests in protecting the materials at issue, including the threat to the vitality of the newsgathering process resulting from court-compelled disclosure,[3] however the Court is persuaded that Defendant's Fifth Amendment due process and Sixth Amendment confrontation rights are paramount. Accordingly, the Court finds that Movants' privilege in this matter must give way to the needs of the defendants.

## Conclusion

For the reasons set forth above, the Court finds that Defendants have demonstrated that the subpoenaed material is unavailable despite exhaustion of all reasonable alternative sources, noncumulative, and clearly relevant to an important issue in the case. Accordingly, Movants' Motion to Quash Defendant's Subpoena is **Denied**. Movants shall comply with the subpoena within one week of the date this Order is entered.

IT IS SO ORDERED.

Dated: December 21, 2021

Hon. Janis L. Sammartino
United States District Judge

---

[3] In *Shoen II* the Court recognized several interests in the determination of whether the journalist's privilege applies in the absence of confidentiality: "[t]he threat of administrative and judicial intrusion into the newsgathering and editorial process; the disadvantage of a journalist appearing to be an investigative arm of the judicial system or a research tool of government or of a private party; the disincentive to compile and preserve non-broadcast material; and the burden on journalists' time and resources in responding to subpoenas." 48 F.3d 412 at 416, quoting *Shoen I*, 5 F.3d 1289 (9th Cir. 1993) ("*Shoen I*").

7