**Robert E. Boyce**
California State Bar No. 79806
**Boyce & Schaefer**
934 23rd Street
San Diego, CA 932101
(619) 232-3320
rb@boyce-schaefer.com

**Laura G. Schaefer**
California State Bar No. 138801
**Boyce & Schaefer**
934 23rd Street
San Diego, CA 932101
(619) 232-3320
ls@boyce-schaefer.com

Attorneys for Defendant
DAVID LAUSMAN (6)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA
**(Honorable Janis L. Sammartino)**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case Number.: 17CR0623-JLS |
| Plaintiff, | **DEFENDANTS' JOINT OPPOSITION TO NOTICE BY THE UNITED STATES OF CASE AGENT TESTIMONY** |
| v. | |
| DAVID NEWLAND, et al. | |
| DAVID LAUSMAN, (6) | |
| Defendants. | |

**DEFENDANTS' JOINT[1] OPPOSITION TO NOTICE BY THE UNITED STATES OF CASE AGENT TESTIMONY**

---

[1] This opposition is being filed jointly by Defendants David Newland, James Dolan, Bruce Loveless, David Lausman, and Mario Herrera.

## I.   INTRODUCTION.

The government filed a notice of its intent to offer a vast array of documents through the testimony of an agent who has no personal knowledge about what these documents mean. The hundreds of documents the government seeks to admit through Agent DeLaPena consist mainly of emails between witnesses whom the government has identified on their witness list but who have not yet testified. Some of these witnesses are alleged conspirators; others are Navy officers or others who are not alleged to be conspirators.

Agent DeLaPena has no direct knowledge of the events recorded in these emails and documents, and he cannot interpret these emails for the jury other than to repeat the out-of-court explanations from hundreds of proffer sessions with Mr. Francis and other cooperating witnesses or interviews with other witnesses. This is an effort by the government to avoid calling percipient witnesses with personal knowledge to explain the "import of the documents" and instead use an agent to introduce the hearsay statements of Leonard Francis, other cooperators, and other witnesses. This improper strategy violates the defendants' Sixth Amendment right of Confrontation and Due Process.

Rule 701, governing the admission of lay opinion testimony, only allows a lay witness to offer opinions that are "rationally based on the witness's perception," and "helpful" to the jury. The Ninth Circuit has interpreted the Rule to prohibit officer lay opinion based on hearsay evidence. The Ninth Circuit cases the government cites, *United States v. Gadson,* 763 F.3d 1189 (9th Cir. 2014) and *United States v. Freeman*, 498 F.3d 893 (9th Cir. 2007) allow officer opinion testimony in a very limited circumstance: where recorded conversations are ambiguous and are directly perceived by the officer. These cases do not allow lay officer opinion that relies on or conveys hearsay evidence, both because it would not be based on the officer's own perceptions, and would not be helpful.

The government asserts Agent DeLaPena needs to testify about

"ambiguous" conversations in the emails, but has not identified a single ambiguous email. The emails and other documents in this case can be explained by the witnesses who authored them and then interpreted by the jury without the assistance of an agent's opinion testimony, based only on the hearsay statements of others.

Although the government denies that Agent DeLaPena is offered as an "overview" or summary witness, in fact, he is being used for that purpose – as a witness who will summarize the government's case before the jury has heard the bulk of the evidence in this case. Courts have "unequivocally condemn[ed] this practice as a tool used by the government to paint a picture of guilt before the evidence has been introduced." *United States v. Casas*, 356 F. 104, 119 (1st Cir. 2004); *United States v. Griffin*, 324 F.3d 330, 349 (5th Cir. 2003); *United States v. Valdivia*, 680 F.3d 33, 47 (1st Cir. 2012).

Furthermore, the government continues to try to "batch" admit hundreds of documents. Although authenticated as business records, these documents, consisting mainly of emails, must be analyzed individually because they each present different evidentiary issues. For example, many of the email chains contain multiple levels of hearsay or present other evidentiary issues, such as relevance and or unfair prejudice. Fed.R.Evid. 403.

Some of these documents are authored by Navy officials who are neither conspirators nor parties, and their statements are being offered for the truth of the matter asserted. Many of these Naval officers and conspirators are on the government's witness list and are available to testify, so there is no need to admit their documents in batches through an agent.

/ / / /

/ / / /

## II. AGENT DELAPENA SHOULD NOT BE PERMITTED TO TESTIFY TO LAY OPINION BASED NOT ON HIS OWN PERSONAL KNOWLEDGE, BUT ON THE STATEMENTS OF OTHER GOVERNMENT WITNESSES WHO HAVE YET TO TESTIFY IN THIS CASE.

The government contends Agent DeLaPena's testimony is needed to "interpret and explain[] the evidence gathered during the investigation."  The bulk of the emails and evidence the government seeks to admit through Agent DeLaPena are authored by individuals on the government's witness list including 1) cooperating witnesses Leonard Francis, Jose Sanchez, Steve Shedd, Robert Gorsuch, Alexander Gillett, Daniel Dusek, Enrico DeGuzman and Don Hornbeck; 2) Naval officers Teresa Kelly, Bill French, Andrew Benson, Austin Tab, Erich Bach, Jeffrey Rathburn, Frederick Pfirmann, Thomas Traaen, Nora Tyson, Charles Dupray and others and 3) former GDMA employees Neil Peterson, Settaphakorn Pornpun and others.  The government should call these percipient witnesses who sent the Navy work emails, incurred the bills, and claim to have conspired with the defendants, not a government agent who gained his knowledge not from his own observations of the events but instead by interviewing those witnesses. There is no "need" for Agent DeLaPena to interpret records authored by available individuals who are on the government's witness list.

Rule 701 and the two Ninth Circuit cases cited by the government, *United States v. Freeman*, 498 F.3d 893 (9th Cir. 2007) and *United States v. Gadson*, 763 F.3d 1189 (9th Cir. 2014) prohibit the lay opinion testimony the government seeks to admit in this case. The Ninth Circuit does not allow an officer to testify to lay opinion that is not based on the witness's perception (for example hearsay) or is not helpful to the jury. *Freeman*, at 905; *Gadson,* at 1207. Lay testimony "is not helpful to the jury if it merely provides interpretation of clear statements that are within the common knowledge of the jury." *Id.*

|   |   |
|---|---|
| 1 | In *Gadson*, an Officer Thompson, began investigating a drug conspiracy. |
| 2 | *Id.* at 1197.  A confidential informant working with the investigation executed |
| 3 | multiple controlled buys of cocaine from the conspirators, and Thompson |
| 4 | conducted surveillance of the drug conspiracy participants.  *Id.* at 1197-1198. |
| 5 | After conducting several days of surveillance at Gadson's house and observing a |
| 6 | good deal of "short-term traffic" indicative of drug dealing, Officer Thompson |
| 7 | obtained a search warrant for the residence and located drugs.  *Id*. at 1198.  After |
| 8 | Gadson's arrest, the officer intercepted a series of recorded phone calls between |
| 9 | Wilson, one of the conspirators, and Wilson's cousin.  Wilson discussed the |
| 10 | police reports and told his cousin "the CI's here," using the standard abbreviation |
| 11 | for a confidential informant.  Wilson also told his cousin that "[s]nitches can't go |
| 12 | into the hallways." *Id.* |
| 13 | At Gadson's trial, Officer Thompson was permitted to testify regarding the |
| 14 | intercepted jail calls between Wilson and the cousin.  The jail recordings were of |
| 15 | poor quality and difficult to understand.  *Id.* at 1204-1205.  Having actively |
| 16 | participated in the surveillance of the conspirators, including Wilson and Gadson, |
| 17 | he was able to identify Wilson's voice on the tapes, and shed light on the meaning |
| 18 | of ambiguous statements in the recordings. |
| 19 | Because Agent Thompson had actively participated in the surveillance of |
| 20 | Wilson, was familiar with his voice and had intercepted Wilson's conversations, |
| 21 | which were of poor quality and contained ambiguous statements, the Ninth |
| 22 | Circuit concluded there was no error in admitting the officer's testimony to assist |
| 23 | the jury.  *Id.* at 1209-1210.  The court reasoned that the officer's lay opinions |
| 24 | were permitted because 1) the calls were ambiguous and 2) the opinions were |
| 25 | based on the officer's own perceptions (surveillance, familiarity with the voice of |
| 26 | Wilson and the terms used).  *Id.* |
| 27 | In reaching this conclusion, the *Gadson* court explained that, Rule 701 |
| 28 | allows a lay witness to offer opinions that are (a) "rationally based on the |

witness's perception," (b) "helpful" to the jury, and (c) "not based on scientific, technical, or other specialized knowledge within the scope of" expert testimony. However, an officer's testimony falls outside the scope of Rule 701 "if it is not based on the witness's perception (for example, if it is based on speculation or hearsay) or is not helpful to the jury. "Lay testimony is not helpful to the jury if it merely provides interpretation of clear statements that are within the common knowledge of the jury." [Internal quotations omitted.] *Id.* Agent DeLaPena should not be allowed to give lay opinions for two reasons. First, the emails and other evidence are not ambiguous. The government has not identified a single email conversation or any other evidence that is ambiguous and requires interpretation by an agent.

Second, Agent DeLaPena, unlike Officer Thompson, did not participate in the events by overseeing controlled buys, surveilling the defendants, intercepting jail calls or conducting wiretaps. Agent DeLaPena has no knowledge about the events referenced in the emails aside from what he learned from the cooperators and other witnesses or what he read in reports prepared by other agents about what they learned from witnesses. His only source of knowledge is secondhand, and in some cases even third or fourth hand.

In *Freeman*, the Ninth Circuit concluded that an agent could testify to the meaning of drug jargon as an expert[2], but when the agent strayed into interpreting ambiguous conversations involving lay opinion, extreme caution was required. And the court also stressed that the "helpfulness" requirement of Rules 701 and 702 *prohibits a witness from opining about the meaning of clear statements*. *Freeman*, at 904-05 ("Although [an expert's] interpretation of ambiguous statements [is] permissible under Fed. R. Evid. 701, 'the interpretation of clear statements is not permissible, and is barred by the helpfulness requirement of both

---

[2] The government has not offered Agent DeLaPena as an expert, nor could it.

5

1  Fed. R. Evid. 701 and Fed. R. Evid. 702.'") *Freeman* recognized there is a risk
2  that the agent will provide lay opinion based on hearsay or other evidence not
3  within the agent's personal knowledge. "If [the agent] relied upon or conveyed
4  hearsay evidence when testifying as a lay witness or if [the agent] based his lay
5  testimony on matters not within his personal knowledge, he exceeded the bounds
6  of properly admissible testimony." *Freeman*, at 904.

7  That is what Agent DeLaPena seeks to do here; he will testify about the
8  meaning of email conversations that are not within his personal knowledge, but
9  are based on information obtained in his proffer sessions with Mr. Francis and
10 others.

11 This is not a case where an agent is interpreting drug jargon, which may
12 require an officer to draw from his or her knowledge gained in other
13 investigations to enlighten the jury on the meaning of certain terms not within the
14 experience of average jurors. Agent DeLaPena seeks to testify about his opinions
15 gained from *this* investigation based on his discussions with cooperators.

16 Incidentally, there is a circuit split with respect to the admissibility of agent
17 opinion, see *Gadson*, at 1223, (Berzon concurring & dissenting), and to preserve
18 that issue for potential later appeal, the defendants assert that the *Freeman* and
19 *Gadson* limitation should be even more narrowly construed, and the proposed
20 agent testimony should also be precluded based on the approach to this issue
21 taken in Second, Fourth, Sixth Eighth and D.C. Circuits. Under either approach,
22 however, Agent DeLaPena is prohibited from offering his lay opinions based on
23 hearsay.
24 / / / /
25 / / / /
26 / / / /
27
28

### III. THE GOVERNMENT SEEKS TO USE AGENT DELAPENA AS A AN IMPERMISSIBLE "SUMMARY/OVERVIEW" WITNESS

The government claims it is not presenting Agent DeLaPena as a summary witness, but only because it knows that there are many restrictions on such witnesses; summary witnesses are allowed in only certain very complex cases, are required to closely adhere to the evidence that has been admitted, and are not permitted to testify about information obtained from sources outside the evidence.

For example, in a case the government cites, *United States v Baker*, 923 F.3d 390, 397-398 (5th Cir. 2019), an agent was permitted to testify as a summary witness in a "channel-stuffing" case. Channel stuffing is a complicated fraudulent scheme companies use to attempt to smooth out uneven earnings to meet Wall Street earnings expectations. *Id*. at 393. Because the case involved elaborate financial transactions involving many records, the court allowed an agent to act as a summary witness, but only after the evidence had been presented, not at the beginning of the case. *Id.* at 396. "To minimize the danger of abuse, summary testimony 'must have an adequate foundation in evidence that is already admitted.'" *Id.* Even then, the Fifth Circuit cautioned against the use of such testimony, stating that summary witness testimony is allowed only in "limited circumstances" in complex cases, and that the court has "repeatedly warned of its dangers." *Id.*

The government asserts that it is not calling Agent DeLaPena as a "summary" witness, but it is obvious that the prosecution seeks to call the agent as a witness to map out its theory of the defendants' guilt, albeit before much evidence has even been presented. This is an impermissible practice. *United States v. Casas*, 356 F.3d 104, 119 (1st Cir. 2004); *United States v. Griffin*, 324 F.3d 330, 349 (5th Cir. 2003); *United States v. Valdivia*, 680 F.3d 33, 47 (1st Cir. 2012).

In *United States v. Casas*, at the beginning of a drug conspiracy case, the government called one Agent Stoothoff to testify that there was a drug trafficking organization associated with Mr. Perez-Delgado, that the defendants were members of this organization, and that the organization handled massive quantities of cocaine and heroin. In doing so, the agent testified about events he learned in his investigation, not events he personally observed. The agent did not differentiate the testimony that was based on personal knowledge from the testimony based on other sources of information, often hearsay. *Casas,* 356 F.3d at 119.

As in this case, the prosecution did not call the person at the center of the conspiracy, Mr. Perez-Delgado, to testify at trial. Agent Stoothoff's testimony was based, at least in part, on the statements of Mr. Perez-Delgado, the leader of the conspiracy who cooperated with the government and provided information. The court criticized this practice, reasoning that it deprived the defense of the opportunity to cross-examine and challenge the main conspirator's statements. As the court in *Casas* observed, "If evidence does not exist in the record, the testimony can hardly be a summation of it." *Id.*

The *Casas* court explained that such overview testimony is "inherently problematic":

> [S]uch testimony raises the very real specter that the jury verdict could be influenced by statements of fact or credibility assessments in the overview but not in evidence. There is also the possibility that later testimony might be different than what the overview witness assumed; objections could be sustained or the witness could change his or her story. Overview testimony by government agents is especially problematic because juries may place greater weight on evidence perceived to have the imprimatur of the government. *United States v. Perez-Ruiz*, No. 02-1466, 353 F.3d 1, 2003 U.S. App. LEXIS 25889, at *23 (1st Cir. Dec. 19, 2003) ("It follows inexorably" from the prohibition on vouching "that the prosecution cannot prop up a dubious witness by having a government agent place the stature of his office behind the witness."). The fact that we and the Fifth Circuit have

> now had to address the government's use of such preliminary overview government agent witnesses is a troubling development. The government should not knowingly introduce inadmissible evidence; it risks losing convictions obtained by doing so.

*Casas*, at 119-120.

In another case, *United States v. Moore*, 651 F.3d 30 (D.C. Cir. 2011), aff'd sub nom. *Smith v. United States*, 568 U.S. 106 (2013) an FBI agent served as an overview witness, testifying first in the government's case-in-chief. *Id.* at 55. The testimony previewed the evidence the jury could expect the government to present. *Id.* The defense objected to the FBI agent testifying to the nature of the conspiracy and the relationships between the co-conspirators, including those who later testified as government witnesses, before the government had presented such evidence. *Id.* The FBI agent also vouched for the cooperating witnesses, stating they would provide truthful evidence because they were insiders and guilty. *Id.* at 58.

The court listed three dangers posed by the summarization of evidence: (1) the jury might treat the summary evidence as additional evidence that unfairly strengthens the government's case; (2) otherwise inadmissible evidence might be introduced; and (3) the government may get an extra closing argument. *Id.* at 56. The court also noted that the First, Second, and Fifth Circuits have reached negative conclusions about the use of summary witnesses, with the Second Circuit prohibiting overview witnesses from giving lay opinion about anticipated evidence unless they satisfied the three requirements of Rule 701. *Id.* at 56-57 (citing *United States v. Casas*, 356 F.3d at 120; *United States v. Garcia*, 413 F.3d 201 (2d Cir.2005); and *United States v. Griffin*, 324 F.3d 330). The court stated that the First, Second, and Fifth Circuits "have viewed agents' hearsay-laden or hearsay-based overview testimony at the onset of trial as a rather blatant prosecutorial attempt to circumvent hearsay rules." *Id.* at 57 (citation omitted).

1       In *Moore*, the court found that the case presented all three dangers of overview testimony as the FBI agent testified to evidence not yet presented, vouched for the cooperating witnesses, and offered inadmissible evidence while providing the government with a second opening argument. *Id.* at 58. On redirect, the FBI agent testified as to how a coconspirator had described his role in the conspiracy; when asked by the district court, the agent admitted that this testimony was based on what the coconspirator had told him. *Id.* The trial court stated that the jury would hear from the coconspirator but the FBI agent stated immediately after that he was not sure if the coconspirator would testify and the transcripts do not show that he ever did. *Id.* The court concluded that this exchange impermissibly invited the jury to rely on alleged facts as if they were already proven. *Id.* at 59. The court noted that "[t]he district court, in turn, failed to sustain appropriate defense objections to FBI Agent Sparks's testimony that purported to offer opinion testimony and to confirm government evidence that had yet to be introduced." *Id.* at 60.

      The court ultimately found that while there was prejudice from the improper admission of the FBI agent's overview testimony, it did not warrant a reversal of the conviction because: (1) each instance of improper testimony was later confirmed by admissible evidence; (2) the defense was limited to cross-examining testifying cooperating coconspirators and other government witnesses; (3) the district court gave a limiting instruction; (4) there was overwhelming evidence of guilt. *Id.* at 61.

      The dangers posed in the *Moore* case are at real risk of occurring here if Agent DeLaPena is permitted to testify. The government has only had two percipient witnesses testify in its case-in-chief. Dozens more are expected to testify about these emails that these witnesses have authored. Agent DeLaPena may have an interpretation of these emails that differs from the authors' interpretation. The jury may give more credit to the agent's interpretation than

the author of the email. Agent DeLaPena will also likely convey inadmissible hearsay in explaining his opinions. And this gives the government a mini "preview" or second opening statement that is not available to the defense. Admitting this evidence is fraught with danger and it is unfair to the defense.

In another case the government cites, *United States v. Beckman*, 787 F.3d 466, 480 (8th Cir. 2015), the defendant challenged on appeal two questions posed to two agents regarding the evidence presented in the case. The court held the two questions were appropriate as "summary" testimony because they were based on the evidence in the case. *Id.* It is not likely the government intends to call Agent DeLaPena to pose only two questions.

The government has the burden of proving that these electronic records and the agent's testimony interpreting these records are nontestimonial. Allowing the government to admit hundreds of emails with multiple layers of hearsay through a government agent who will interpret the records based on knowledge he gained from statements made by cooperators in proffer sessions is the "functional equivalent" of "ex parte in-court testimony" that violates the defendants' Sixth Amendment right of confrontation and due process. *Melendez-Diaz v. Massachusetts*, 557 U.S 305, 310 (2009) (confrontation); *Michigan v. Bryant*, 562 U.S. 344, 370, fn. 13 (2011) ("Of course the Confrontation Clause is not the only bar to admissibility of hearsay statements at trial. . . federal rules of evidence prohibit the introduction of hearsay, subject to exceptions. Consistent with those rules, the Due Process Clauses of the Fifth and Fourteenth Amendments may constitute a further bar to admission of, for example, unreliable evidence.")

**IV. THE GOVERNMENT SHOULD BE PRECLUDED FROM INTRODUCING "BATCHES" OF EMAILS AND OTHER DOCUMENTS WITHOUT ESTABLISHING AN INDIVIDUAL BASIS FOR THE ADMISSIBILITY OF EACH OF THE DOCUMENTS**

The government again seeks to admit "batches" of documents through Agent DeLaPena. The motion fails to specifically describe the documents it seeks

to admit in which "batch" or state the basis of their admissibility.[3] These are not "ordinary" business records, such as routine records of business transactions, or regular phone or bank records; these are, for the most part, emails that were not seized by government agents pursuant to a warrant, but were selected and produced by Mr. Francis from foreign locations in anticipation of and after his arrest, and after his cooperation began.[4] The government's assertion that these are business records and are therefore admissible is monolithic and not particularized to the individual emails contained in the hundreds of email chains, attachments, receipts and other documents. The emails, although authenticated, remain subject to challenge on a variety of grounds such as relevance, unfair prejudice, and hearsay. Indeed, many of these documents are long email chains containing multiple layers of hearsay. Each layer of hearsay must be examined and ruled upon. Fed. R. Evid. 805. And the purpose for which they are offered and the context are also relevant for the determination of admissibility.

Many emails were sent by Naval officers who are not members of the conspiracy and who are available to testify, but have not yet testified. These Naval officer emails are not admissions and are not made in the furtherance of the conspiracy.

Furthermore, as the court previously recognized, authorship of the emails by a conspirator does not render the emails automatically admissible. The government must establish that the statement was made in the course of and in furtherance of the conspiracy. The Ninth Circuit strictly construes the "in

---

[3] Yesterday the government filed a generic "this is the law" motion that also fails to specifically address the documents it seeks to produce. The defense will file a separate response addressing that motion.

[4] Defense verification of the authenticity of receipts, created nearly two decades ago in multiple foreign countries, has proved to be difficult, if not impossible. The defense does not have an army of NCIS agents on the ground in every country in the Pacific to check the authenticity of Mr. Francis' receipts and has no power to subpoena foreign businesses. Given this severe disadvantage, cross-examination of the source of these documents is paramount to a fair trial.

1 furtherance of the conspiracy requirement." See *United States v. Nazermiam*, 948
2 F.2d 522 529 (9th Cir. 1991); *United States v. Foster*, 711 F.2d 871 (9th Cir.
3 1983); *United States v. Fielding*, 645 F.2d 719, 726 (9th Cir. 1981). To be "in
4 furtherance" the statement must further the common objectives of the conspiracy.
5 *United States v. Yarbrough*, 852 F.2d 1522, 1535 (9th Cir. 1988). "When
6 inquiring whether a statement was made 'in furtherance of' a conspiracy, we do
7 not focus on its actual effect in advancing the goals of the conspiracy, but on the
8 declarant's intent in making the statement." *United States v. Nazermiam, supra*,
9 948 F.2d at 529. In other words, a determination of whether a particular email
10 was made in furtherance of a conspiracy requires an email by email analysis
11 within the context of the witness's testimony to determine the declarant's intent in
12 making the statement.

13 As this Court recognized, these emails may not be admitted into evidence
14 en masse, as the documents were prepared by different authors in different
15 contexts, and reflect conversations and other information that are not susceptible
16 to a "one size fits all" test of admissibility.

17 **V.    CONCLUSION.**

18 The government is acutely aware that the Leonard Francis and other
19 witnesses with personal knowledge have serious credibility problems, and in an
20 effort to avoid direct reliance on these witnesses, the government is seeking to
21 introduce the witnesses claimed explanations and interpretations of the documents
22 through an agent, a witness with the imprimatur of the government. This strategy
23 unfairly deprives the defendants of the opportunity to cross-examine the witnesses
24 with knowledge. And even if those witnesses do, eventually, testify, their
25 testimony will have been improperly "vouched for" by the government agent.
26 Where, as here, the government has identified on its witness list the authors of the
27 records it seeks to introduce and the individuals with personal knowledge about
28

1  the meaning of the documents, this strategy is neither "necessary" nor "proper."
2  For these reasons, the Court should deny the government's request to admit Agent
3  DeLaPena's lay opinion testimony and not allow the "batch" admission of seven
4  hundred exhibits.

Dated:     March 29, 2022          Respectfully submitted,

*s/ Laura Schaefer*
*/s/ Robert E. Boyce*
Counsel for David Lausman

*/s/ Joseph D. Mancano*
*/s/ James M. Fitzpatrick*
Counsel for David Newland

*/s/ Todd W. Burns*
Counsel for James Dolan

*/s/ Thomas Peter O'Brien*
*/s/ Daniel Prince*
*/s/Nicole Lueddeke*
Counsel for Bruce Loveless

*/s/ Michael L. Crowley*
Counsel for Mario Herrera